In the Matter of the Application of ESTHER HILDA SALZBERG, Respondent, for Payment of Award Made for Parcel Damage No. 94, etc., in the Matter of Acquiring Title to Cooper Avenue etc., in the Second Ward, Borough of Queens, City of New York. THE CITY OF NEW YORK and Another, Appellants; TITLE GUARANTEE AND TRUST COMPANY, Respondent.

Second Department, December 5, 1924.

**Taxation** — tax liens in city of New York — comptroller refused to pay petitioner full amount awarded in condemnation proceedings on ground that comptroller was required by Greater New York charter to deduct amount of certain taxes for years 1891–1897 — petitioner's predecessor acquired title through foreclosure of tax lien transferred by city for taxes for 1899–1910 — city was made party to foreclosure and tax liens in question were alleged — construing Greater New York charter, § 1030, with other sections relating to transfers of tax liens, purchaser of tax lien had right to assume that all prior tax liens were included — city is estopped to assert existence of tax liens for 1891–1897 — said taxes cannot be deducted.

The comptroller of the city of New York did not have the right to deduct from the amount awarded to the petitioner in condemnation proceedings, the amount of taxes for the years 1891–1897, but will be required to pay the full amount of the award, since it appears that the petitioner's predecessor in title purchased from the city of New York tax liens for taxes for the years 1899–1910; that thereafter said tax liens were foreclosed in an action in which the city of New York was made a party defendant and in which the complaint alleged the exist-

ence of the taxes for the years 1891–1897; and that the city of New York appeared in that action and consented to the entry of certain orders and to the judgment of foreclosure and sale.

Section 1030 of the Greater New York charter regulating transfers of tax liens provides that a transfer of tax lien from the city shall operate to transfer and assign the tax lien free of all taxes, assessments and water rents which accrued before the day of the date mentioned in the advertisement of the sale as stated therein. Construing that section in connection with the other sections of the charter relating to transfers of tax liens, it must be held that a purchaser of tax liens has the right to assume that all prior tax liens are included in the sale, and, therefore, the city is estopped from thereafter contending that prior liens exist against the property.

APPEAL by the City of New York and another from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 25th day of June, 1924, resettling and amending *nunc pro tunc* an order of the Queens Special Term, entered in said clerk's office on May 8, 1924, directing the comptroller to pay the petitioner the sum of $250 for an award made for certain premises without the deduction of certain taxes.

*George P. Nicholson, Corporation Counsel [Joel J. Squier, Joseph G. Mathews* and *Charles E. Clarke* with him on the brief], for the appellants.

*Hyman Rubin [Arthur P. Hilton* and *Clarence C. Ferris* with him on the brief], for the respondents.

YOUNG, J.:

In the matter of acquiring title to Cooper avenue, etc., the petitioner was awarded $250 for premises described in the report as parcel damage No. 94. The premises of which the parcel was a part were acquired by Bertha Coopersmith by a deed from a referee in proceedings to foreclose a tax lien. She conveyed the same premises to Harry Salzberg, and he conveyed to the petitioner.

The comptroller refused to pay petitioner the amount of the award except after deducting certain taxes which appeared on the books of the collector of assessments and arrears as unpaid and a lien against the premises, covering the years 1891 to 1897 inclusive. The reason for this refusal was that the charter required him to make such deduction.

The proceedings upon which petitioner's title and right to the award depend arise from a transfer of tax lien under the Greater New York charter. Tax liens for the years 1899 to 1910 were sold at public auction pursuant to the charter, and a transfer of tax lien made thereunder on November 19, 1912, to one Harry Zirinsky. This transfer of tax lien purported to transfer to Zirinsky

in consideration of his having paid the items and charges for those years set forth in the lien aggregating $226.36, " the tax lien affecting said premises for all taxes, assessments and water rents which became a lien prior to the eighth day of October, 1910, the penalties and interest thereon," etc., subject to the lien for and right of the city of New York to collect and receive all taxes, assessments and water rents, etc., which accrue and become a lien upon the premises on and after the date of the first advertisement of sale, namely, October 8, 1910. The transfer of tax lien specified November 19, 1915, as the date when the amount of the tax lien was due to the purchaser.

This transfer of tax lien was assigned by Zirinsky to Charles A. O'Hara, and by him assigned to Rosie Silverman, who on June 17, 1915, after default had been made for six months in the payment of subsequent taxes, etc., brought an action to foreclose the same resulting in a judgment of foreclosure and sale entered April 7, 1916, and the premises were thereupon duly sold under the judgment and a deed made and delivered by the referee to Bertha Coopersmith.

In the foreclosure action the city of New York was made a party defendant, the amended complaint alleging in substance that the premises were sold to the town of Newtown for taxes for 1891 to 1893 inclusive and to the city of New York for taxes of 1894 to 1897 inclusive, and an unpaid school tax for 1897, and certificates issued, and that the city of New York was made a party defendant " to bar it from any rights and interest it may have by reason of the aforesaid sales to the Town and to the City of New York, as above alleged and to bar it from any rights it may have to collect any other taxes, assessments and water rents which may have become a lien on the herein described property prior to the 8th day of October, 1910," etc. The city of New York appeared in that action by Lamar Hardy, corporation counsel, and consented to the entry of various orders and to the judgment of foreclosure and sale.

The question presented by this appeal is as to the right of the comptroller to deduct the taxes for the years 1891–1897 inclusive from the award and depends upon the construction of certain provisions of the Greater New York charter and particularly section 1030 thereof, which reads as follows: " A transfer of tax lien shall operate to transfer and assign the tax lien upon the lands or tenements described therein for the taxes, assessments and water rents, and penalties, the interest thereon, and the charges of the notices and advertisement given pursuant to section ten hundred and twenty-seven of this act, and all other costs and charges, so

advertised for sale, *free of all taxes, assessments and water rents, which accrued before the day of the date mentioned in the advertisement of the sale as stated therein,* and to create a lien upon the property affected thereby for the interest to which the purchaser may be entitled under his bid, but subject to the lien for and right of the city to collect and receive all taxes, assessments and water rents which accrued or which became a lien on and after the day of the date of [mentioned in] the first advertisement of such sale as stated therein." (Laws of 1901, chap. 466, § 1030, as added by Laws of 1908, chap. 490.)*

It is contended by the respondent that under this section the transfer of tax lien to Zirinsky through the foreclosure of which she acquired her title operated to transfer and assign the tax lien upon the premises " free of all taxes, assessments and water rents, which accrued before the day of the date mentioned in the advertisement of the sale as stated therein," and she also contends that similar language contained in the transfer of tax lien itself had the same effect. In other words, that notwithstanding the fact that there were outstanding unpaid taxes which were a lien upon the property, and which were not specifically mentioned in the transfer of tax lien, such transfer operated to create in the purchaser thereof a first lien on the premises upon the foreclosure of which all prior taxes were barred and cut off. It is also claimed by the respondent that by reason of the appearance of the city of New York in the foreclosure action and its consent to the entry of judgment therein, it was barred from claiming any lien under the taxes in question because the amended complaint therein contained a specific allegation setting up such taxes and stating that the purpose of making it a party was to bar it from any claim thereunder.

On the other hand, it is contended by the comptroller that these taxes were an outstanding lien against the property, and that the transfer of tax lien only transferred to the purchaser the taxes specifically mentioned and itemized, and that the city of New York was not bound by the judgment in the foreclosure suit.

In order to understand the true intent and purpose of the Legislature in enacting the provision relating to the transfer of tax liens, it is, I think, well to examine the language of other material sections of the charter relating to transfers of tax liens. Section 1027 (as amd. by Laws of 1908, chap. 490)† provides, in substance, that the right of the city of New York to receive taxes, etc., and the lien thereof, may be sold and transferred as provided

* Since amd. by Laws of 1913, chap. 682.— [REP,
† Since amd. by Laws of 1913, chap. 326.— [REP.

in the charter, such right and lien to be called " tax lien " and the instrument by which it is assigned, a " transfer of tax lien." It then provides, in substance, that when any tax shall have been due and unpaid for three years, or any water rents, for four years, they may be advertised for sale and sold at public auction for the lowest rate of interest, not exceeding twelve per cent, at which any person shall offer to take the same in consideration of advancing the tax, interest, etc. It is also provided that the advertisement of such sale shall *include all items* up to a day named in the advertisement. Section 1028 (as renum. from § 1029 and amd. by Laws of 1908, chap. 490)* gives the comptroller the right to suspend or postpone any such sale. Section 1029 (as renum. from § 1030 and amd. by Laws of 1908, chap. 490) provides for the conduct of the sale by the collector of assessments and arrears, and for the terms of such sale, and gives the city of New York the right to bid in any such tax lien if no other bids are received. It also contains other provisions not material to this controversy. Then follows section 1030, a portion of which is above quoted. But that section further provides that " A transfer of tax lien shall contain a transfer and assignment by the city of the tax lien sold to the purchaser, the date of the sale, the aggregate amount of the tax lien so transferred, and the items of taxes, assessments, water rents, penalties, and interest composing the tax lien," and contains other provisions relating to the contents of the transfer of tax lien, and provides for the execution and acknowledgment of said transfer of tax lien similar to a deed. Section 1031 (as added by Laws of 1908, chap. 490) provides for the record thereof similar to a mortgage and also permits an assignment of the transfer of tax lien and provides for the recording thereof. Section 1032 (as added by Laws of 1908, chap. 490)† provides that the aggregate amount of each tax lien so transferred shall be due three years from the date of the sale or upon default in payment of subsequent taxes, etc. Section 1035 (added by Laws of 1908, chap. 490, as amd. by Laws of 1911, chap. 65) provides for the foreclosure of such tax liens upon default under practice similar to actions to foreclose mortgages. Section 1038 (added by Laws of 1908, chap. 490, as amd. by Laws of 1913, chap. 681) provides for a judgment directing the sale of the property affected, etc., and section 1039 (as added by Laws of 1908, chap. 490) provides that every final judgment in such an action " shall be binding upon, and every conveyance upon a sale pursuant thereto, shall transfer to and vest in the purchaser all the right, title, interest and estate in and claim upon the real property affected by such

* Since amd. by Laws of 1918, chap. 63.— [Rep.
† Since amd. by Laws of 1917, chap. 63.— [Rep.

judgment, of the plaintiff, each defendant upon whom the summons is served," etc.

ᵇ The remaining sections of this title 5 of chapter 17 of the charter have no bearing upon the question presented here. It will be observed that the sections of the charter above referred to contain specific provisions requiring the advertisement of sale of these tax liens to contain the particular items which are to be sold, and to include all items up to a day named in the advertisement, and also required the transfer of tax lien to contain the aggregate amount of the tax lien transferred and the items thereof. (§§ 1027, 1029, 1030.)

I think it was contemplated by the Legislature that in making these sales of tax liens, the city would, as section 1027 requires, include in the advertisement of sale all items of taxes which appeared against a particular piece of property at the time of the advertisement, and that it, therefore, used the language in question to divest the city of its right in all such items and to make it clear to purchasers at such sales that they might assume without further inquiry or inspection of the records of arrears of taxes that the collector had performed his full duty, and that the items of tax advertised were all that were outstanding against the property at the date mentioned in the advertisement, so that such purchasers would acquire a first lien thereon. This, I think, is the meaning of the language used, and, in my opinion, the respondent had a right to rely upon it. In other words, in view of this language, the city is estopped to assert its right to collect any taxes which accrued before the date mentioned in the advertisement.

It is, therefore, unnecessary to determine the question as to the effect of the judgment in the foreclosure action.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

KELLY, P. J., RICH, KELBY and KAPPER, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.