In the Matter of the Application of THE MOUNT VERNON TRUST COMPANY, Petitioner, for a Peremptory Mandamus Order against JOHN LYNN, Comptroller of the City of Mount Vernon, Defendant.*

Supreme Court, Westchester County, June 30, 1937.

* Affd., 254 App. Div. 680.

*Strang & Taylor*, for the petitioner.

*Lester D. Stickles, Corporation Counsel*, for the defendant.

ALDRICH, J. This is an application for a peremptory order of mandamus to require the comptroller of the city of Mount Vernon to cancel a certain assessment for a special improvement upon the records in his office. The petitioner was formerly the first mortgagee and is now the owner of certain real property in the city of Mount Vernon, now designated on the tax assessment map as lot 26, in block 2115, section 2. The property was formerly designated as lots 506 and 507 in block 5, and the northerly half of lot 508 in block 14. On April 8, 1930, an assessment for $105.24 was confirmed against the premises for a sewer installation. By the city charter this assessment could be paid in five installments. The first installment could be paid without interest within one month after the confirmation of the assessment, and one installment could be paid with interest thereon at the rate of five per centum per annum computed from the date when said assessment was confirmed on or before each recurring annual anniversary of said date.

None of these installments were paid. The annual taxes for the years 1931, 1932 and 1933 also were unpaid. During the year 1934, by Local Law No. 2 of that year, the charter of the city of Mount Vernon (Laws of 1922, chap. 490) was amended by adding article XII-A (§§ 162-a–162-t) relating to the sale of tax and assessment liens. (Local Laws of 1934, p. 76.) By that statute the right of the city of Mount Vernon to receive taxes and assessments and the lien or liens therefor may be sold by the city and after such sale shall be transferred in the manner provided by this act. For the purposes of the act each installment of an assessment payable in

annual installments shall be deemed a separate assessment. Once in each year not later than the month of May, whenever any tax or assessment shall remain unpaid for two years since the same became due and payable, the comptroller is required to advertise the tax liens on the lands for sale, including in such advertisement the tax liens for all items due and unpaid for said year and all years previous and subsequent thereto, except the taxes or assessments of the current year for which a transfer of tax lien has not been sold, with interest thereon, up to a date named in the advertisement. After the adoption of the local law the comptroller, in pursuance thereof, proceeded to advertise the property accordingly. There was unpaid at that time all of the special assessment and the annual taxes for the years 1931, 1932 and 1933. The annual taxes were included in the advertisement of the tax sale but the special assessment was inadvertently omitted therefrom. On June 27, 1934, the tax lien was sold and transferred to the petitioner.

By the local law it is provided that a transfer of tax lien shall operate to transfer and assign the tax lien upon the lands or tenements described therein for the taxes and assessments, with the penalties and interest thereon, and the charges for the notices given pursuant to this article " free of all taxes and assessments which accrued before the day specified in the notice of sale, and to create a lien upon the property affected thereby for the interest to which the purchaser may be entitled under his bid, but subject to the lien for and right of the city to collect and receive all taxes and assessments which accrued or which became a lien on and after the day specified in such notice of sale " (§ 162-f). The petitioner on June 27, 1934, bought the advertised tax liens and the transfer of tax lien dated on that day purports to transfer to the petitioner and its assigns " the tax lien upon and affecting said lands and tenements for all taxes and assessments which became a lien prior to the 31st day of December, 1933, and penalties and interest thereon, and the charges of the notice and advertisement of said sale, and all other costs and charges accrued thereon." The certificate thereupon recites the annual taxes but omits any reference to the special assessment. By a subsequent provision the transfer is made " subject, however, to the lien for and right of the City of Mount Vernon to collect and receive all taxes, assessments, penalties and interest thereon which accrued and became a lien or which shall accrue and become a lien upon said premises on and after the 1st day of January, 1934." Giving effect to the provision of the local law that " each installment of an assessment payable in annual installments shall be deemed a separate assessment," it would appear that four of the five annual installments of the special assess-

ment should have been included in the transfer of tax lien. The fifth installment appears to have become a lien on the property when the assessment was confirmed, on April 8, 1930, but being payable in installments, the last installment would not actually accrue until April 8, 1934. The applicable date selected by the comptroller was December 31, 1933. The certificate expressly reserved to the city all assessments, penalties and interest thereon which accrued and became a lien or which shall accrue and become a lien upon said premises on and after January 1, 1934.

The conclusion, therefore, is that the first four installments of the special assessment should have been advertised for sale as a part of the transfer of tax lien and should have been included in the bid for the same. Not having been done, what are the rights of the parties? By the local law, if default shall be made in the payment of the taxes and assessments on or before the date specified in the notice, the tax lien is to be sold at public auction " for the lowest rate of interest not exceeding twelve percentum per annum at which any person or persons shall offer to take the same, in consideration of advancing the aggregate sum of the said taxes, assessments and penalties, as the case may be, the interest thereon as aforesaid to the time of sale, the charges of the above mentioned notice and advertisement and all other costs and charges accruing thereon." The petitioner did not purport to purchase the lien of the four installments of the special assessment which should have been included in the sale. It purported to purchase only the lien for the annual taxes for 1931, 1932 and 1933. Those were the only ones specifically set forth in the notice. The sale could be made only " in consideration of advancing the aggregate sum of said taxes, assessments and penalties as the case may be," etc.

The amount of the four installments of the special assessment, etc., was not advanced by the petitioner. The certificate should be construed as including only those annual taxes specifically advertised and sold and for which the aggregate amount was advanced and which are specifically enumerated in the certificate. The law, however, says (§ 162-f) that the transfer shall operate to transfer and assign the tax lien " free of all taxes and assessments which accrued before the day specified in the notice of sale," which was December 31, 1933. The legal effect of this transaction was not to discharge the four installments of the special assessment. The effect was to postpone the lien of those installments to the transfer of tax lien acquired by the petitioner.

We must look at this situation from two standpoints: *First*, from the standpoint of the city as against the premises; and, *second*, from the standpoint of the petitioner as against the city.

The petitioner acquired its transfer of tax lien for the three annual taxes and by section 162-f the four installments of the special assessment were in legal effect subordinated to the lien of the transfer of tax lien and the rights of the petitioner thereunder, but such installments were not legally discharged. The rights of the city to receive the four installments of the special assessment being subordinate to the rights of the petitioner, the petitioner in a proper action for the foreclosure of the tax lien may cut off such rights by making the city a party defendant or if the city in the meantime attempts to include these four annual installments in any later sale for unpaid taxes, then by making the purchaser of such tax lien a party defendant.

This construction of the statute protects the purchaser of a tax lien to the extent to which he is reasonably entitled. It also protects the city against the entire loss of taxes or assessments which may be inadvertently omitted from a notice of sale and certificate thereunder. Regarded as making this application in its capacity as the holder of the transfer of tax lien, the petitioner does not require any relief to protect its rights, as its lien is ahead of the four installments of the special assessment. Regarded as an application by petitioner in its capacity as owner of the premises, through the foreclosure of the first mortgage, the petitioner is not entitled to the relief asked because as a result of that foreclosure it stands in the position of the prior owner, the city not having been made a party to the foreclosure action.

*Matter of Salzberg* (212 App. Div 44; affd. on opinion below, 240 N. Y. 651) is not in conflict with this decision. In that case under substantially similar provisions of a statute, it appeared that the purchaser of a transfer of tax lien after the maturity of the lien brought an action for the foreclosure thereof. The municipal corporation was made a party defendant in that action and the alleged claim of the municipality under the prior taxes which had been omitted from the sale and certificate of the transfer of tax lien held by the plaintiff was specifically alleged and the relief demanded, among other things, was that the municipality should be barred and foreclosed of any claim thereunder. A judgment of foreclosure in the usual form was entered. Naturally, the rights of the city were thereby cut off by the sale made under the judgment. Here there has never been any foreclosure. The petitioner claims the estoppel to exist merely by the transfer of tax lien. In that case the municipality was estopped by the foreclosure. The application for a peremptory order of mandamus is denied, but without costs.

Settle order on two days' notice at chambers, Poughkeepsie.